The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. However, pursuant to its authority under G.S. 97-85, the Full Commission has modified the Deputy Commissioners decision and enters the following Opinion and Award.
 *********** EVIDENTIARY RULING
Before the record was closed, plaintiff moved to exclude the testimony and medical records of Dr. Mark E. Brenner because he had allegedly engaged in an ex-parte non-consensual conversation with the Rehabilitation Nurse, Sally Beamon. Plaintiff further alleged that this conversation resulted in a change of plaintiffs treating physician from Dr. Ciliberto to Dr. Brenner and in Dr. Brenner amending plaintiffs return to work slip.
After reviewing the deposition testimony of both Nurse Beamon and Dr. Brenner, along with plaintiffs testimony regarding whether or not an improper exparte non-consensual communication took place between Nurse Beamon and Dr. Brenner, the undersigned find that no improper exparte non-consensual communication occurred between Dr. Brenner and Nurse Beamon. Therefore, plaintiffs Motion to Exclude the Testimony of Dr. Mark Brenner is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 22 July 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. At all relevant times herein, defendant was a duly qualified self-insured with Key Risk Management Services as its servicing agent.
4. The parties stipulated to plaintiffs medical records from CRA Managed Care, Inc. Pinehurst Surgical Clinic, P.A., Sanford Family Medical Center, Sanford Primary Care Center, Dr. Mark E. Brenner, Dr. David Ciliberto and from Dr. James Carver Hill except any and all portions of Dr. Hills notes regarding plaintiffs psychological or psychiatric conditions which were excluded from the record by Deputy Commissioner Young on 5 October 1998.
5. The issues presented are:
a) Whether plaintiff sustained an injury by accident to his back arising out of and in the course of his employment with defendant-employer on 19 December 1995?
b) Whether plaintiff has reached maximum medical improvement regarding his injury of 19 December 1995?
c) Whether plaintiff is entitled to any benefits under the North Carolina Workers Compensation Act?
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing on 22 July 1998, plaintiff was 53 years old. Prior to 19 December 1995, plaintiff had no back problems
2. Plaintiff began working for defendant in 1986 as a correctional sergeant. Plaintiffs job duties required bending, stooping and twisting. Plaintiffs average weekly wage was $504.37, yielding a compensation rate of $336.41.
3. On 19 December 1995, plaintiff was at work and while checking the yard and fence line, plaintiff stepped over a ditch, slid in the mud and fell on his right hip and right arm. Plaintiff experienced immediate pain in his right hip and right arm. Although he was in pain, plaintiff feared that he would be fired if he missed any time from work. Plaintiff continued to work for defendant notwithstanding his pain until 29 December 1995.
4. Plaintiff reported his injury to the superintendent when the superintendent returned to work on 20 December 1995.
5. Plaintiff presented to Dr. Ciliberto, an orthopedic surgeon, on 29 December 1995 complaining of continuing back pain. Dr. Ciliberto diagnosed plaintiff with intervertebrae disc protrusion superimposed on pre-existing intervertebral disc degeneration and osteoarthritis of the lumbar back. Dr. Ciliberto excused plaintiff from work, prescribed pain medication and told plaintiff to return in one week.
6. Plaintiff returned to Dr. Ciliberto on 4 January 1996. On 15 January 1996, Dr. Ciliberto opined that plaintiff could return to work on a limited duty, but after the plaintiffs continued complaints if intense pain, Dr. Ciliberto rescinded his opinion and the return to work slip and continued to excuse plaintiff from work. Dr. Ciliberto ordered an MRI for 19 January 1996.
7. Plaintiffs MRI revealed degenerative disc disease at T12, L1 and L3-5. On 25 January 1996, Dr. Ciliberto returned plaintiff to work for only four hours per day with sedentary work and no lifting, bending or physical contact and only occasional walking and standing.
8. On 27 January 1996, Nurse Sally Beamon, R.N., and a rehabilitation specialist, was assigned to plaintiffs case. Nurse Beamon informed plaintiff that she had scheduled an appointment for a second opinion with Dr. Mark Brenner, an orthopedic surgeon.
9. On 9 February 1996, plaintiff self-referred to Dr. James Hill, a family practitioner.
10. On 28 February 1996, Nurse Beamon accompanied plaintiff to his appointment with Dr. Brenner. Dr. Brenner examined plaintiff and reviewed the results of the MRI. Dr. Brenner concluded that plaintiff was suffering from a lumbar sprain historically related to the 19 December 1995 work incident which was superimposed on pre-existing degenerative disc disease of the lumbar spine. Dr. Brenner concluded that plaintiff could return to light duty starting 11 March 1996 with the following restrictions: no stooping or bending, no lifting or carrying over 10 pounds and no prolonged standing. Following plaintiffs 28 February 1996 appointment with Dr. Brenner, defendant transferred plaintiffs care to Dr. Brenner.
11. Dr. Brenner examined plaintiff on 21 March 1996. Dr. Brenner noted that plaintiffs condition was unchanged and that he could participate in light duty work. However, Dr. Brenner also noted that plaintiff complained that his pain prevented him from participating in any work-related activity.
12. On 22 April 1996, plaintiff presented to Dr. Brenner for another examination. Dr. Brenner concluded after the examination that plaintiff remained capable of participating in light duty work in accordance with the previous restrictions.
13. Plaintiff returned to Dr. Brenner on 2 May 1996. Dr. Brenner concluded that since 19 April 1996, plaintiff had been capable of working four hour days and that by 15 June 1996, plaintiff would be capable of working eight hour days with the previous restrictions. Dr. Brenner stated plaintiff was at maximum medical improvement and assigned plaintiff a 4% disability rating to his back. Dr. Brenner released plaintiff from his treatment.
14. Plaintiff was involved in an automobile accident on 8 January 1998 in which he was rear-ended. Plaintiff was taken by ambulance to Central Carolina Hospital.
15. On 14 January 1998, plaintiff presented to Dr. Ciliberto for an unscheduled appointment. Plaintiff complained of increased back pain subsequent to the automobile accident.
16. On 19 January 1999, pursuant to the 30 November 1998 Order, plaintiff presented to Dr. Brenner for an examination. Dr. Brenner opined that plaintiff had long reached maximum medical improvement and that his previous 4% disability rating remained unchanged. Dr. Brenner concluded that plaintiff could work, but with the following restrictions: no long-term repetitive pushing, pulling, squatting, kneeling and stooping, and no repetitive lifting of objects greater than 10 pounds. Dr. Brenner stated the restrictions were probably permanent. However, the restrictions in Dr. Brenners opinion, were only necessary because of plaintiffs pre-existing degenerative disc disease and had no relationship to plaintiffs superimposed sprain he suffered as a result of the 19 December 1995 work injury.
17. Dr. Hill opined that plaintiffs fall on 19 December 1995 was the precipitating event for plaintiffs inability to return to work. Dr. Hill further opined that plaintiff should not return to work as a correctional officer and that he will need medical treatment for his back injury for the rest of his life. However, the Full Commission finds that plaintiffs treatment by Dr. Hill was unauthorized.
18. Dr. Ciliberto opined with a reasonable degree of medical certainty that plaintiffs fall at work on 19 December 1995 was the precipitating cause of plaintiffs inability to return to work as a corrections officer. Moreover, Dr. Ciliberto determined to a reasonable degree of medical certainty that plaintiff has a lumbar back disorder which inhibits plaintiff from the full scope of strenuous activity and that he would not recommend that plaintiff return to the occupation of corrections officer. Dr. Ciliberto opined that plaintiff may be able to participate in an activity that is sedentary where his time is spent sitting and standing and walking without strenuous exertion without climbing, bending, squatting, stooping or heavy lifting.
19. Dr. Brenners opinions that plaintiff has reached maximum medical improvement and that he should be able to participate in full-time work-related activity by 15 June 1996 do not refer specifically to whether plaintiff can return to work at his usual job as a corrections officer and perform the bending, twisting, stooping or prolonged standing or lifting that are required activities of a corrections officer. Moreover, the very same restrictions ordered by Dr. Brenner for plaintiff are the very same essential activities required in plaintiff-employees work as a corrections officer. Dr. Brenner opines that plaintiff can return to work, but that plaintiff must be permanently restricted from the very activities in which Dr. Brenner releases plaintiff to perform. Dr. Ciliberto has examined and evaluated plaintiff on numerous occasions, thus enabling him to become more familiar with the plaintiff-employees medical condition than Dr. Brenner, whose evaluation of plaintiff were only for purposes of a second opinion. For these reasons and because Dr. Brenners opinion is vague and contradictory, the Full Commission gives greater weight to the testimony of Dr. Ciliberto. Dr. Cilibertos opinions are consistent and he is in a better position to outline a specific treatment plan for plaintiff to lessen his degree of disability.
20. The Full Commission finds that as of 28 February 1996, Dr. Ciliberto is hereby reinstated as plaintiffs authorized treating physician.
21. On 19 December 1995, plaintiff sustained an injury by accident arising out of the course of his employment with defendant in the form of a specific traumatic incident of the work assigned when he fell at work injuring his back. Plaintiffs injury by accident is the cause of plaintiffs continuing pain beyond 18 April 1996 and his inability to return to work as a correctional officer for defendant.
22. Plaintiff has not yet reached the healing period for his back and no credible permanent disability rating has been given. Therefore, the issue of permanent partial disability is not addressed in this Opinion and Award and is left open for future determination.
23. As supported by his answers to defendants interrogatories, plaintiff has received per month a pre-tax amount of $1,419.15 in long-term disability payments made by defendant.
24. Defendant has reasonably defended this matter and no award of attorneys fees is warranted.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 19 December 1995, plaintiff sustained an injury by accident arising out of the course of his employment with defendant in the form of a specific traumatic incident of the work assigned when he fell at work injuring his back. G.S. 97-2(6).
2. As a result of his 19 December 1995 injury by accident, plaintiff is entitled to salary continuation pursuant to G.S. 143-166.14 and 143-166.16
at the rate of $504.37 per week beginning on 19 December 1995 and for two years thereafter. Upon the expiration of two years, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $336.41 per week from that date and continuing through the present until plaintiff returns to work or until further order of the Commission. G.S. 97-29.
3. Because the long-term disability payments provided to plaintiff by defendant were paid during the periods for which plaintiff is entitled to salary continuation and temporary total disability compensation, defendant is entitled to a dollar for dollar credit for these payments. G.S. 97-42
4. Dr. Ciliberto is hereby reinstated as plaintiffs treating physician effective 28 February 1996. Dr. Ciliberto shall henceforth continue as plaintiffs treating physician. G.S. 97-25.
5. As a result of his 19 December 1995 injury by accident, plaintiff is entitled to have defendant pay for all of his medical expenses incurred, including all treatment rendered by Dr. Ciliberto, but not including any treatment by Dr. Hill, for so long as such evaluations, examinations and treatments may reasonably be requested to effect a cure, give relief and will tend to lessen plaintiffs disability. G.S. 97-2(19); G.S. 97-25; G.S. 97-25.1.
6. As a result of his 19 December 1995 injury by accident, plaintiff is entitled to have defendant provide vocational rehabilitation assistance and services to reassess and/or retrain plaintiff for jobs within his restrictions. G.S. 97-25. These services shall continue until plaintiff secures employment. Id.
7. Plaintiff is not entitled to attorneys fees as defendant reasonably defended this matter. G.S. 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioners holding and enters the following:
 AWARD
1. Subject to a reasonable attorneys fee approved herein, defendant shall pay plaintiff salary continuation, pursuant to G.S. 143-166.14 and143-166.16 at the rate of $504.37 per week for the period of 19 December 1995 and continuing for two years thereafter. Upon the expiration of two years, and subject to a reasonable attorneys fee approved herein, defendant shall pay plaintiff temporary total disability compensation at the rate of $336.41 per week from that date through the present and continuing until such time has he returns to work or until further order of the Commission.
2. Because the long-term disability payments provided to plaintiff by defendant were paid during the periods for which plaintiff is entitled to salary continuation and temporary total disability compensation, defendant is entitled to a dollar for dollar credit pursuant to G.S. 97-42
for these payments.
3. Defendant shall pay for all medical expenses incurred by plaintiff as a result of his 19 December 1995 injury by accident, including all treatment rendered by Dr. Ciliberto, but not including any treatment by Dr. Hill, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiffs disability.
4. Defendant shall provide vocational rehabilitation assistance and services to reassess and/or re-train plaintiff for jobs within his restrictions. These services shall continue until plaintiff secures employment.
5. Plaintiff has not yet reached the end of the healing period for his back and no credible permanent disability rating has been given. Therefore, the issue of permanent partial disability is not addressed in this Opinion and Award and is left open for future determination. In the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any to his back which may be due, either party may request a hearing from the Commission to resolve this issue.
6. A reasonable attorneys fee of twenty-five percent (25%) of two-thirds of the salary continuation to which plaintiff is entitled is approved for counsel for plaintiff. Having accrued, this fee shall be deducted from the amount due plaintiff and paid directly to counsel for plaintiff. Additionally, a reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded to plaintiff after defendant has received its credit, is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check shall thereafter.
7. Defendant shall pay the costs, including expert witness fees in the amount of $353.00 to Dr. Ciliberto, $353.00 to Dr. Brenner, $310.00 to Dr. Hill and $90.00 to Nurse Beamon.
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
DISSENTING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER